**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JUDY PAN,** | **CIVIL ACTION NO. _____** |
| **Plaintiff,** | **JURY TRIAL DEMANDED** |
| **v.** | |
| **TEMPLE UNIVERSITY HOSPITAL, INC.,** | |
| **Defendant.** | |

## COMPLAINT AND JURY DEMAND

Plaintiff Judy Pan, by and through her attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint"):

## PRELIMINARY STATEMENT

1.      This is an action for an award of damages, attorneys' fees and other relief on behalf of Plaintiff Judy Pan ("Dr. Pan"), a former Medical Resident and employee of Defendant Temple University Hospital, Inc. ("Temple" or the "Hospital"). Dr. Pan has been harmed by Defendant's discrimination and harassment based on her sex and retaliation for Dr. Pan's complaints about discrimination and harassment. Temple also breached its agreements with Dr. Pan by, among other things, improperly reporting to the California Medical Board and a federal verification agency that Dr. Pan was on academic remediation.  As a result of Temple's actions and inactions, Dr. Pan has also suffered and continues to suffer the loss of lucrative job opportunities.

2.      This action is filed pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq. ("Title VII"), the

Philadelphia Fair Practices Ordinance ("PFPO"), the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA"), and the common law of the Commonwealth of Pennsylvania.

## JURISDICTIONAL STATEMENT

3.      This Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4.      The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5.      This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

6.      All conditions precedent to the institution of this suit have been fulfilled. On December 6, 2019, Plaintiff timely filed a Complaint with the City of Philadelphia Commission on Human Relations ("PCHR"), which was dual filed as a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). This action has been filed within ninety (90) days of Plaintiff's receipt of a Notice of Right to Sue from the EEOC.  With respect to the PFPO and PHRA claims herein, it has been more than one year since Dr. Pan filed her Complaint with the PCHR.  She has received a notice of rights and closure notice from the PCHR and has filed this action within two years of receiving her notice of rights.

## VENUE

7.      This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8.      This action properly lies in the Eastern District of Pennsylvania because the claims and significant activities associated with those claims arose in this judicial district, and Plaintiff was employed by Defendant in this judicial district.

### PARTIES

9.      Plaintiff Judy Pan is an adult female, with a current residence at 824 N Washington St., Baltimore, Maryland 21205.

10.     Defendant Temple University Hospital, Inc. located at 3401 N. Broad Street, Philadelphia, Pennsylvania, is an academic medical center and teaching hospital offering inpatient and outpatient medical services.

11.     At all relevant times, Defendant Temple is and has been an employer employing more than five hundred (500) employees.

12.     Defendant Temple does significant business within the Commonwealth of Pennsylvania.

13.     At all relevant times, employees of Temple acted as agents and servants for Temple.

14.     At all relevant times, employees of Temple were acting within the scope of their authority and in the course of employment under the direct control of Temple.

15.     At all times material hereto, Temple acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Temple and in furtherance of Temple's business.

16.     At all times relevant hereto, Defendant is and has been an "employer" and/or "person" within the meaning of the laws at issue in this matter, and is accordingly subject to the provisions of said laws.

3

17.     At all relevant times hereto, Plaintiff Judy Pan was an "employee" within the meaning of the laws at issue in this matter, and is accordingly entitled to the protections of said laws.

18.     This Honorable Court has jurisdiction over Defendant.

**FACTS**

19.     By letter dated May 19, 2016, Temple University Hospital offered Dr. Pan a position in its graduate residency fellowship Plastic Surgery Program (the "Program").

20.     Dr. Pan signed her acceptance of the offer (the "Employment Agreement").

21.     The length of the Program was three (3) years at a salary of $69,742.40 per year and was to begin on August 1, 2016.

22.     On August 1, 2016, per the terms of her Employment Agreement, Dr. Pan began her employment with Temple University Hospital as a Medical Resident Fellow in Plastic Surgery.

23.     While serving Temple as a Resident Fellow, Dr. Pan performed her duties in an ethical, dedicated and excellent manner.

24.     Notwithstanding Dr. Pan's dedication and consistent performance, Temple discriminated against and harassed Dr. Pan on the basis of her sex and retaliated against Dr. Pan for complaining about the discriminatory and harassing conduct, resulting in, among other things, a significant delay in Dr. Pan obtaining her medical license from the California Medical Board.  As a result of Temple's actions in causing a delay in Dr. Pan's California medical license, Dr. Pan was terminated from a fellowship program in California, her career was irreparably damaged, and she lost out on lucrative job opportunities that she otherwise would have been qualified for.

25.     After beginning of her Medical Residency Fellowship in August 2016, Dr. Pan worked tirelessly towards the attainment of her medical license, which was to be awarded subsequent to her completion of her residency program in or about August 2019.

26.     During her residency, however, Temple discriminatorily treated Dr. Pan differently than her male peers, such that Dr. Pan received unjustified discipline and/or other unfavorable treatment, while her male peers did not.

27.     Per the requirements of the Temple program policy, if a resident fails to achieve the 20th percentile on the American Society of Plastic Surgery ("ASPS") in-service examination, the resident is to be placed on academic probation.

28.     Dr. Pan failed to achieve the 20th percentile on the ASPS in-service examination, and in June 2018, Temple placed Dr. Pan on academic probation. There is, however, no national standard cut-off percentile and Dr. Pan learned that no other plastic surgery program places residents on reportable academic probation based solely on the examination scores.

29.     The American Society of Plastic Surgery (the governing committee that administers the annual in-service exam) indicated that the in-service exams are "not intended to be used as the sole data point in evaluating a resident's content knowledge.  ASPS and the In-Service Exam committee recommends that performance on the In-Service Exam be evaluated in the context of other assessment measures as well as trends."

30.     Thus, Temple's policy of placing residents, like Dr. Pan, on academic probation based strictly on in-service exam scores goes against the guidance of the ASPS and In-Service Exam Committee.

31.     In fact, the Chief of the program at the time, Dr. James Fox, indicated to Dr. Pan that the probation was only meant to be an internal program assessment and not a reportable event.

32.     In advising Dr. Pan that she was being placed on academic probation, Temple also stated that Dr. Pan was also being put on clinical remediation, claiming she was "not meeting" her clinical competencies in certain areas, as she had scored a Level "2" rather than a Level "3" in certain areas.

33.     This was entirely shocking to Dr. Pan, as she had been led to believe that the academic probation was to be solely related to the in-service examination scores.

34.     Significantly, immediately prior to being placed on academic probation, Dr. Pan had been informed that she was doing well clinically and had not been given any indication that she had not been meeting clinical standards.

35.     In addition, the scoring of certain Level "2's" pertained solely to one evaluation of a total of nineteen (19) evaluations made during the year, whereas the remaining 18 out of 19 evaluations from that year had no issues whatsoever with Dr. Pan's clinical competency.

36.     Upon information and belief, the alleged "clinical competency" issues related to one specific patient incident that occurred in or about October 2017.

37.     With regard to this particular patient, Dr. Pan, under direct supervision of the attending supervising surgeon Dr. Janelle Wagner, dissected too deeply into the pleural space during a surgical procedure, which is a known and common risk involved in the procedure.  As a result of this risk, some surgeons do not perform this particular aspect of the procedure.

38.     Dr. Pan acted appropriately and responsibly in immediately contacting her attending supervising physician, Dr. Wagner, repairing the defect, and following Dr. Wagner's

specific instructions to order an X-ray once the patient was in recovery.  Dr. Wagner was also present and operating on the same patient.  Dr. Wagner, however, left immediately after the case, without waiting for the chest X-ray she had ordered to be completed.

39.     Temple improperly alleged that Dr. Pan failed to follow the proper sign-out procedure regarding the incident, when in fact, Dr. Pan had followed proper sign-out procedure and it was the male transitioning resident who had not.

40.     Throughout the time period of Dr. Pan's residency, from August 2016 through August 2019, the clinical practice for transition of care was a written sign-out emailed between residents.

41.     None of the residents had received or had been made aware of any formal sign-out policy.

42.     In fact, Dr. Pan had followed the accepted sign-out procedures that she knew to be in effect at the time, by emailing the transitioning resident, Jose Munoz, regarding the patient, as well as having completed both a verbal and face-to-face sign-out with the overnight resident staying at the hospital that night.

43.     The other Plastic Surgery resident assigned to care for the patient, Jose Munoz, a male resident, did not follow up on Dr. Pan's sign-out according to the accepted policy and admitted that he never read the sign-out, even until the next morning, despite the fact that he had been on call since the evening prior.  A few weeks later, Dr. Munoz included in his own written sign-outs for the residents to not call him for verbal sign-outs, despite the policy having been changed to include both verbal and written sign-outs.

44.     Significantly, although Dr. Pan was placed on clinical remediation for her alleged failure to follow the sign-out procedure (even though she had), Jose Munoz, the male resident

assigned to care for the patient along with Dr. Pan who had failed to follow up on the sign-out according to policy, was never disciplined in any way for this incident.

45.     Thus, although Dr. Munoz had actually been the one who failed to follow the sign-out policy, only Dr. Pan, the female resident who had followed policy, received discipline or negative consequences as a result of this incident.

46.     After the incident in October 2017, Temple sought to justify its discipline of Dr. Pan by sending an email to the residents referring to a switch to oral sign-outs.

47.     Dr. Pan strongly disputed the validity and justification for being placed on academic remediation.

48.     In an email to Temple Program Director Dr. Sameer Patel and Dr. James Fox, Dr. Pan noted that, to the extent that the academic remediation was based on the incident on October 17, 2017, Dr. Pan had followed protocol with sign-outs and care, had been the one to recognize the compartment syndrome that had been missed by the trauma service, and had properly contacted the attending physician to report her findings.

49.     Despite this, and despite lack of any legitimate reason to do so, Temple put Dr. Pan on a performance improvement plan.

50.     The basis for the remediation was in violation of the governing board for residency training programs – the ACGME – guidelines.  These guidelines mandate that evaluations must be based on rotations lasting longer than two months and that evaluators must have worked with the resident comprehensively in order to be able to adequately assess skills. Neither of these two guidelines were followed with respect to the evaluation that caused Dr. Pan to be placed on remediation.

51.     Even though Dr. Pan did not deserve to be placed on a performance improvement plan, she successfully completed all areas set forth in the performance improvement plan.

52.     Accordingly, on December 5, 2018, Dr. Pan officially came off of clinical remediation.  Dr. Pan was never notified of this in any way.  While Dr. Wagner's evaluation was what had caused Dr. Pan to be placed on remediation, Dr. Wagner failed to submit any further evaluations regarding Dr. Pan's clinical performance.

53.     According to the performance improvement plan she had been issued, Dr. Pan was supposed to meet with Dr. Patel every three months for re-evaluation, but Temple did not adhere to this commitment.  Additionally, Dr. Pan was not notified when she was taken off of remediation by Dr. Patel some time during the Fall or Winter of 2018.

54.     Due to the discriminatory application of clinical remediation and discipline, Dr. Pan complained to various sources that the actions taken against her were unfair and discriminatory.

55.     For example, Dr. Pan further noted in her email to Dr. Patel and Dr. Fox that, with regard to the clinical remediation and clinical competency issues, Dr. Pan believed that Temple's grounds for placing her on clinical remediation were unreasonable, biased and discriminatory.

56.     In addition, on or about August 12, 2018, Dr. Pan sent an email to Temple that she believed that Temple had placed her on clinical remediation on a discriminatory basis.

57.     Dr. Pan also emailed Temple legal counsel regarding the inappropriate remediation, who, in turn, forwarded the email to Director of Training Programs, Sue Coull.

58.     After her complaints of discrimination, Temple retaliated against Dr. Pan and increased its discriminatory practices against her.

59.     Specifically, Ms. Coull and others at Temple engaged in a concerted effort to retaliate against Dr. Pan due to her complaints.

60.     Certain other male residents of the Program had also been placed on academic remediation.

61.     The treatment that Dr. Pan received from Temple regarding the academic remediation, however, differed substantially from the treatment received by her male peers who had also received academic remediation.

62.     This disparate and unfavorable treatment, discrimination and retaliation prevented Dr. Pan from receiving her earned medical license and subjected her to a lengthy medical consultant investigation.

63.     In November 2018, Dr. Pan submitted her application to receive her medical license from the State of California.

64.     After she submitted her application, Temple improperly reported to the Medical Board of the State of California that Dr. Pan was on clinical remediation.

65.     Notably, although Temple reported the remediation to the State Board of California upon Dr. Pan's application despite no clear requirement that Temple report it to the State Board, Temple did not similarly report the academic remediation of Dr. Pan's male peers.

66.     In one example, Dr. Dare Ajibade, a male Temple Resident, had applied for his medical license from the Texas Medical Board. Although Dr. Ajibade had been on academic remediation at the time of his application, Temple did not report Dr. Ajibade's academic remediation to the Texas Medical Board.

67.     Dr. Jose Munoz, a male Temple resident, had applied for his medical license from the Florida Medical Board. Although Dr. Munoz had informed Dr. Pan that he had been on

academic remediation, Temple did not report Dr. Munoz's academic remediation to the Florida Medical Board.

68.     In fact, Temple arbitrarily and wrongfully reported Dr. Pan's academic remediation to the California Medical Board, as academic remediations are not reportable statuses under relevant Temple policies.

69.     Additionally, Temple reported the remediation to a federal certification verification agency, causing the remediation to then be wrongfully filed with both federal and state agencies.

70.     After Temple discriminatorily and improperly reported Dr. Pan's academic remediation to the California Medical Board, Dr. Pan was unable to obtain her medical license from the California Medical Board for an extended period.

71.     Dr. Pan requested that Temple assist her in clearing up any issue or confusion regarding her Temple residency and fellowship so that Dr. Pan would be able to obtain her medical license from the California Medical Board.

72.     Despite her requests, Temple failed and/or refused to assist Dr. Pan in clearing up any unresolved issue so that she could obtain her medical license from the California Medical Board.

73.     Specifically, on September 29, 2019, Dr. Patel agreed to testify on Dr. Pan's behalf before the Medical Board of California, but subsequently changed his mind and refused to testify on her behalf.

74.     Ultimately, Dr. Patel submitted a letter to the California Medical Board stating that Dr. Pan did not misrepresent her status to the California Medical Board.

75.     After Dr. Patel sent his letter to the California Medical Board on behalf of Dr. Pan, in or about October 2019, the Board requested additional information regarding the circumstances of Dr. Pan's academic probation from Temple.

76.     Despite Dr. Pan's requests for assistance, and the request of the California Medical Board, Ms. Coull declined, in writing, to provide any further information to the California Medical Board.

77.     Temple further discriminated and retaliated against Dr. Pan by refusing to allow her to take her medical board exams on schedule in October 2019.

78.     Temple indicated that the basis for its refusal to allow Dr. Pan to take her exams in October 2019 was that Dr. Pan had been on academic probation during her final academic year.

79.     Again, however, and very tellingly, Temple treated Dr. Pan's male peers differently.

80.     As noted above, like Dr. Pan, Dr. Ajibade also had been placed on academic probation during his final academic year. However, Temple, upon information and belief, permitted Dr. Ajibade to sit for his medical board exams on schedule in May 2020, which was postponed to October 2020. Temple argued that Dr. Ajibade did not receive his final in-service score before he had to register for his board exam, however, Dr. Pan also did not receive her final in-service score before she had to register but was told to postpone her exam instead, per protocol. Dr. Pan received notification that she ultimately passed her written board exam in December 2021, while other recent graduates unfortunately did not pass.

81.     On or about July 30, 2019, Dr. Pan initiated an inquiry with Temple's Human Resources Department to question why she had been disciplined for the incident in October 2017 when Jose Munoz, the male resident who had not followed procedure, had not been disciplined.

82.     Approximately one month later, on or about August 28, 2019, Dr. Pan received a written sign-out policy from Human Resources Partner Jaqueline Nardi.

83.     Ms. Nardi stated that the policy sent to Dr. Pan had been in effect at the time of her discipline.

84.     Notably, although the title of the Document refers to the Division of Plastic Surgery, the policy references procedures for the vascular department and includes several sections that are not relevant to the Division of Plastic Surgery.

85.     When Dr. Pan raised these issues with Ms. Nardi, Ms. Nardi claimed to have mistakenly sent the wrong policy, and, on September 4, 2019, she sent Dr. Pan another document purporting to be the correct policy.

86.     The "correct policy" sent was actually an identical document to the original one sent, except that three of four references to "vascular residents" had been edited to now refer to "plastic surgery residents."

87.     Even more tellingly, neither Dr. Pan nor any other plastic surgery resident had ever been made aware of any such policy or protocol prior to the October 2017 incident.  Past and current residents have submitted signed statements that indicate that they have never seen nor received such a policy.

88.     When Dr. Pan questioned Dr. Patel and Ms. Coull when such policy had been given to the residents, neither Dr. Patel nor Ms. Coull provided Dr. Pan with a date on which the policy had been given.

89.      Immediately after Temple provided the alleged protocol to Dr. Pan in August of 2019, they posted the same protocol on the residents' website and required every plastic surgery resident to acknowledge that they had received and reviewed the protocol.

90.      When Temple Ethics Committee was notified that false documents were submitted during a Human Resources investigation, the Compliance Officer failed to return any emails or phone calls, and no investigation was ever done regarding the submission of the false policy.

91.      Dr. Pan was not allowed any grievance process to contest or address her remediation.  Though Temple's legal team agreed that Dr. Pan qualified for FERPA, they initially cited outdated legal sources to refuse her a hearing, and once presented with updated sources, still continued to deny her an academic hearing.

92.      Thereafter, Dr. Pan received her termination papers from her fellowship program in California due to her continued lack of a California medical license as a result of Temple's actions.

93.      Per probation policy, Dr. Pan was not permitted to take her written board exam as scheduled, however, another similarly situated male was permitted to take his written board exam as scheduled.

94.      The timing of Temple's actions taken against Dr. Pan, coupled with the lack of any legitimate justification for such actions, indicates that the real reason for Temple's treatment of Dr. Pan was discrimination and retaliation for her complaints.

95.      The reasons given for the adverse actions taken against Dr. Pan were pretextual.

96.      Despite her loyalty, dedication and consistently excellent performance, and given her treatment during her residency with Temple, Dr. Pan maintains that Temple discriminated

against her on the basis of her sex and retaliated against her for her complaints about discrimination.

97.     As a result of the discrimination, harassment, retaliation and other wrongful conduct perpetrated against Dr. Pan, Dr. Pan has suffered significant financial losses including, among other things, loss of employment and loss of wages.

98.     Notably, Dr. Pan lost out on and continues to lose out on lucrative job opportunities due to Temple's improper and unlawful treatment of Dr. Pan, including due to the fact that Dr. Pan could not start her Fellowship in California in a timely fashion.

99.     Due to Defendant's wrongful acts, Dr. Pan was denied a full unrestricted California medical license for a significant period and it was only after she obtained legal counsel and spent significant resources to undo Temple's wrongful conduct that she was able to obtain her license.

100.    Typically, it takes approximately three months to obtain a California medical license.  As a result of Temple's discriminatory and retaliatory actions, it took Dr. Pan over a year.

101.    Dr. Pan was compelled to obtain more than a dozen signed letters from supervising physicians who had experience actually working with Dr. Pan to attest to her clinical/surgical competence.  Additionally, during the medical board investigation, an independent medical consultant also reviewed Dr. Pan's entire resident file, and deemed Dr. Pan clinically sound.  These facts cast further doubt on Temple's decision to place Dr. Pan on remediation.

102.     Dr. Pan has suffered significant financial loss, harm to her reputation in the community and other harm and damages as a direct and proximate result of the actions and inactions of the Defendant.

103.     As a result of the Defendant's conduct described herein, Dr. Pan has incurred a significant obligation for attorneys' fees and costs of bringing this action.

104.     As a result of Defendant's conduct described herein, Dr. Pan has suffered and continues to suffer significant emotional distress and hardship.

105.     Dr. Pan has suffered and continues to suffer mental anguish and severe emotional distress as a proximate result of the actions and/or inactions of Defendant.

106.     Defendant and its agents acted with knowledge of, or in reckless disregard of the probability that their actions and inactions would cause Dr. Pan to suffer emotional distress.

107.     Defendant discriminated against and harassed Dr. Pan because of her sex, and retaliated against Dr. Pan for complaining of the discrimination and harassment, in violation of Title VII, the PHRA and the Philadelphia Fair Practices Ordinance.

108.     Defendant willfully violated Title VII, the PHRA and the Philadelphia Fair Practices Ordinance, as Defendant knew that its actions violated the statutes and/or acted with reckless disregard as to whether its actions violated Title VII, the PHRA and the Philadelphia Fair Practices Ordinance.

## **COUNT I**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq.**

109.     Plaintiff Judy Pan repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

110.    Based on the foregoing, Defendant Temple University Hospital engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq.

111.    In discriminating against and harassing Dr. Pan because of her sex, and in retaliating against Dr. Pan for her complaints of discrimination and harassment, Defendant violated Title VII.

112.    Defendant's violations were intentional and willful.

113.    Defendant's violations warrant the imposition of punitive damages.

114.    As the direct and proximate result of the aforesaid unlawful employment practices engaged in by Defendant Temple University Hospital, Plaintiff Judy Pan has sustained a loss of earnings and earning potential, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

## COUNT II
### The Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

115.    Plaintiff Judy Pan repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

116.    Based on the foregoing, Defendant Temple University Hospital engaged in unlawful employment practices in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

117.    In discriminating against and harassing Dr. Pan because of her sex, and in retaliating against Dr. Pan for her complaints of discrimination and harassment, Defendant violated the PHRA.

118.     As the direct and proximate result of the aforesaid unlawful employment practices engaged in by Defendant Temple University Hospital, Plaintiff Judy Pan has sustained a loss of earnings and earning potential, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

## COUNT III
### PHILADELPHIA FAIR PRACTICES ORDINANCE
### Philadelphia Code §§ 9-1100, et seq.

119.     Plaintiff Judy Pan repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

120.     Based on the foregoing, Defendant Temple University Hospital engaged in unlawful employment practices in violation of the Philadelphia Fair Practices Ordinance.

121.     In discriminating against and harassing Dr. Pan because of her sex, and in retaliating against Dr. Pan for her complaints of discrimination and harassment, Defendant violated the PFPO.

122.     As the direct and proximate result of the aforesaid unlawful employment practices engaged in by Defendant Temple University Hospital, Plaintiff Judy Pan has sustained a loss of earnings and earning potential, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

## COUNT IV
### Breach of Contract

123.     Plaintiff Judy Pan repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

124.    Temple breached its agreement with Dr. Pan by improperly reporting her academic remediation, and by failing to comply with applicable ACGME guidelines.

125.    In addition, Temple policy clearly states that academic remediations are not reportable statuses.

126.    Although academic remediations are not to be reported to medical Boards, Temple breached its agreement with Dr. Pan by reporting her academic remediation to the California Medical License Board and a federal credentialing agency.

127.    Per the remediation protocol, Dr. Pan was supposed to meet every three months with the Program Director to review her progress.  These meetings never took place, in direct violation of the Program's stated remediation protocol.  In addition, Dr. Wagner, whose evaluation placed Dr. Pan on remediation, failed to submit a follow-up evaluation the following year.  Dr. Pan was never notified when she was taken off of remediation.

128.    Dr. Pan was required to postpone her written board exam by at least one year, however, a similarly situation male resident was allowed to take his written board exam as scheduled, without any delay.

129.    All conditions precedent, if any, necessary to bring Dr. Pan's action against Temple have been satisfied.

130.    As a direct, foreseeable, natural, ordinary and proximate result of Temple's breaches and other bad faith conduct, Plaintiff Judy Pan has suffered significant financial and other damages including, but not limited to, loss of earnings, loss of employment opportunities, severe emotional and mental distress, and other damages and harm.

## COUNT V
**Breach of Oral Contract**

131.    Plaintiff Judy Pan repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

132.    Count V is brought in the alternative to Count IV.

133.    In the alternative, Temple orally agreed, promised and/or represented to Dr. Pan that academic remediations would not be reported to any medical licensing board.  It is written in the program protocol that remediation is not a reportable status.  Remediation status was not reported with respect to two other male residents on their respective state medical license applications.

134.    Notwithstanding the foregoing, Temple reneged on its agreement, promises and representations to Dr. Pan by inappropriately reporting that she had been on academic remediation to the California Medical License Board and a federal credentialing agency.

135.    In so doing, Temple has failed and refused to abide by the terms of its promises and agreement with Dr. Pan.

136.    Temple is in material breach of its oral agreement with Dr. Pan.

137.    All conditions precedent, if any, necessary to bring Dr. Pan's action against Temple have been satisfied.

138.    As a direct, foreseeable, natural, ordinary and proximate result of Temple's breaches and other bad faith conduct, Plaintiff Judy Pan has suffered significant financial and other damages including, but not limited to, loss of earnings, loss of employment opportunities, severe emotional and mental distress, and other damages and harm.

<u>**COUNT VI**</u>
**Breach of the Duty of Good Faith and Fair Dealing**

139.     Plaintiff Judy Pan repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

140.     Dr. Pan entered into the Employment Agreement with Temple for the position of Medical Resident Fellow.

141.     Dr. Pan worked tirelessly as a Medical Resident Fellow for Temple with the understanding and expectation that Temple would foster and support Dr. Pan's residency such that Dr. Pan would obtain her medical license from a state Medical Board.

142.     Contrary to supporting Dr. Pan in her efforts to obtain a medical license, Temple thwarted Dr. Pan's efforts by, among other things, making false and inaccurate reports to the California Medical Board and a federal credentialing agency, and reporting Dr. Pan's academic remediation to the California Medical Board and a federal credentialing agency even though it was against Temple policy.

143.     As a direct, foreseeable, natural, ordinary and proximate result of Temple's breaches and other bad faith conduct, Plaintiff Judy Pan has suffered significant financial and other damages including, but not limited to, loss of earnings, loss of employment opportunities, severe emotional and mental distress, and other damages and harm.

**<u>PRAYER FOR RELIEF</u>**

144.     Plaintiff Judy Pan repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Judy Pan respectfully requests that this Court enter judgment in her favor and against Defendant Temple University Hospital, Inc. and Order:

a.   Appropriate equitable relief;

21

b.  Defendant to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination, harassment and retaliation;

c.  Defendant to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of its unlawful conduct;

d.  Defendant to pay Plaintiff punitive damages;

e.  Defendant to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

f.  Defendant to pay Plaintiff's costs of bringing this action and her attorneys' fees;

g.  Plaintiff be granted any and all other remedies available pursuant to Title VII, the PHRA, the PFPO and Pennsylvania common law; and

h.  Such other and further relief as is deemed just and proper.

## **<u>JURY DEMAND</u>**

Plaintiff Judy Pan hereby demands trial by jury as to all issues so triable.


By: *<u>/s/ Christopher A. Macey, Jr.</u>*
    Christopher A. Macey, Jr., Esquire
    Bell & Bell LLP
    1617 John F. Kennedy Boulevard
    Suite 1254
    Philadelphia, PA 19103
    (215) 569-2500

    *Attorneys for Plaintiff Judy Pan*


Dated: September 15, 2022